

COPY

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH (68581)
DARREN J. ROBBINS (168593)
TRAVIS E. DOWNS III (148274)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
bill@lerachlaw.com
darrenr@lerachlaw.com
travisd@lerachlaw.com

Attorneys for Plaintiff

RMW

RS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALASKA HOTEL & RESTAURANT EMPLOYEES PENSION TRUST FUND, Derivatively on Behalf of MARVELL TECHNOLOGY GROUP LTD., <br><br> Plaintiff, <br><br> vs. <br><br> SEHAT SUTARDJA, PANTAS SUTARDJA, GEORGE A. HERVEY, WEILI DAI, JOHN M. CIOFFI, KUO WEI (HERBERT) CHANG, PAUL R. GRAY, DOUGLAS R. KING and ARTURO KRUEGER, <br><br> Defendants, <br><br> – and – <br><br> MARVELL TECHNOLOGY GROUP LTD., a Bermuda corporation, <br><br> Nominal Defendant. | **VIA FAX** <br> No. **C 06 3894** <br><br> VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, CONSTRUCTIVE FRAUD, CORPORATE WASTE, UNJUST ENRICHMENT, GROSS MISMANAGEMENT, ACTION FOR ACCOUNTING AND VIOLATIONS OF CALIFORNIA CORPORATIONS CODE <br><br><br> DEMAND FOR JURY TRIAL |

**NATURE OF THE ACTION**

1.     This is a shareholder derivative action brought by a shareholder of Marvell Technology Group Ltd. ("Marvell" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement arising out of a scheme and wrongful course of business whereby Defendants allowed senior Marvell insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Marvell insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 2001.

2.     Between fiscal 2001 and the present, Defendants also caused Marvell to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Marvell carried with them an exercise price that was *not less than* the fair market value of Marvell stock on the date of grant and issuance.[1]

3.     In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be *backdated* to dates when the Company's shares were trading at or near the lowest price for that relevant period. By May 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars. These grants were included in more than $766 million in stock sale proceeds for Defendants and former officers and directors of Marvell.

---

[1]     Marvell's fiscal year ends on the Saturday closest to January 31.

1        4.     Defendants' misrepresentations and wrongful course of conduct violated the

2  Securities Exchange Act of 1934 (the "Exchange Act"), as well as California law.  By authorizing

3  and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Marvell to issue

4  false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior Marvell

5  executives; and (iii) subjected Marvell to potential liability from regulators including the SEC and

6  the IRS.

7        5.     Defendants' gross mismanagement and malfeasance over the past decade has

8  exposed Marvell and its senior executives to criminal and civil liability for issuing false and

9  misleading financial statements.  Specifically, Defendants caused or allowed Marvell to issue

10  statements that failed to disclose or misstated the following: (i) that the Company had problems

11  with its internal controls that prevented it from issuing accurate financial reports and projections;

12  (ii) that because of improperly recorded stock-based compensation expenses, the Company's

13  financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the

14  Company's public disclosures presented an inflated view of Marvell's earnings and earnings per

15  share.

16        6.     Defendants' malfeasance and mismanagement during the relevant period has

17  wreaked hundreds of millions of dollars of damages on Marvell.  The Company's senior

18  executives were incentivized to over-pay themselves, to profit from their misconduct by cashing

19  in on under-priced stock options and to issue false financial statements to cover up their misdeeds.

20  Defendants' breaches of fiduciary duties in the administration of the Company's stock option

21  plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to

22  the plans.  The Company has now been mentioned as one of several companies likely to have

23  manipulated options.  Meanwhile, certain of the Defendants and former officers, who received

24  under-priced stock options and/or knew material non-public information regarding Marvell's

25  internal control problems, abused their fiduciary relationship with the Company by selling over

26  $766 million worth of their personally held shares at artificially inflated prices during the relevant

27  period.  This action seeks recovery for Marvell against these faithless fiduciaries, as Marvell's

28  Board of Directors, as currently composed, is simply unable or unwilling to do so.

1    **INTRADISTRICT ASSIGNMENT**

2    7.    A substantial part of the events or omissions which give rise to the claims in this

3    action occurred in the county of Santa Clara and as such this action is properly assigned to the San

4    Jose division of this Court.

5    **JURISDICTION AND VENUE**

6    8.    The claims asserted herein arise under §§10(b), 14(a) and 20(a) of the Exchange

7    Act, 15 U.S.C. §§78j(b), 78n(a) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated

8    thereunder, and under California law for breach of fiduciary duty, abuse of control, constructive

9    fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts,

10   conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means

11   and instrumentalities of interstate commerce, the United States mail and the facilities of a national

12   securities market.

13   9.    This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15

14   U.S.C. §78aa, as well as 28 U.S.C. §§1331 and 1337. This Court also has supplemental

15   jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

16   10.   This action is not a collusive one to confer jurisdiction on a court of the United

17   States which it would not otherwise have.

18   11.   Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C.

19   §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation

20   and dissemination of materially false and misleading information, occurred in substantial part in

21   this District. Marvell is located in and conducts its business in this District. Further, Defendants

22   conduct business in this District, and certain of the Defendants are citizens of California and

23   reside in this District.

24   **PARTIES**

25   12.   Plaintiff Alaska Hotel & Restaurant Employees Pension Trust Fund is a

26   shareholder of Marvell, and holds and has continually held Marvell stock since April 2002.

27   13.   Nominal party Marvell is a Bermuda corporation with its principal executive

28   offices located at 700 First Avenue, Sunnyvale, California.

1      14.    Defendant Sehat Sutardja ("S. Sutardja") has been Chairman of the Board of

2 Directors and Chief Executive Officer ("CEO") of Marvell and since 1995. Because of S.

3 Sutardja's positions, he knew the adverse non-public information about the business of Marvell,

4 as well as its finances, markets and present and future business prospects, via access to internal

5 corporate documents, conversations and connections with other corporate officers and employees,

6 attendance at management and Board meetings and committees thereof and via reports and other

7 information provided to him in connection therewith. S. Sutardja, and his wife Weili Dai, were

8 the only members of Marvell's stock option committee. During the relevant period, S. Sutardja

9 participated in the issuance of false and/or misleading statements, including the preparation of the

10 false and/or misleading press releases and SEC filings. Based on his knowledge of material non-

11 public information regarding the Company, defendant S. Sutardja violated Cal. Corp. Code

12 §§25402 and 25502.5 by selling 5.2 million shares of Marvell stock for proceeds of $144.3

13 million during the relevant period (including sales by his family partnership).

14      15.    Defendant Pantas Sutardja ("P. Sutardja") has been Chief Technology Officer of

15 Marvell since 1999. Previously, P. Sutardja served as the Vice President from 1995 to 1999. P.

16 Sutardja has also been a director of Marvell since 1995. Because of P. Sutardja's positions, he

17 knew the adverse non-public information about the business of Marvell, as well as its finances,

18 markets and present and future business prospects, via access to internal corporate documents,

19 conversations and connections with other corporate officers and employees, attendance at

20 management meetings and via reports and other information provided to him in connection

21 therewith. During the relevant period, P. Sutardja participated in the issuance of false and/or

22 misleading statements, including the preparation of the false and/or misleading press releases and

23 SEC filings. Based on his knowledge of material non-public information regarding the Company,

24 defendant P. Sutardja violated Cal. Corp. Code §§25402 and 25502.5 by selling 4.3 million shares

25 of Marvell stock for proceeds of $148.7 million during the relevant period.

26      16.    Defendant George A. Hervey ("Hervey") has been Chief Financial Officer

27 ("CFO") and Vice President – Finance of Marvell since April 2000. Hervey is also CFO of

28 Marvell Semiconductor, Inc. Because of Hervey's positions, he knew the adverse non-public

1 | information about the business of Marvell, as well as its finances, markets and present and future
2 | business prospects, via access to internal corporate documents, conversations and connections
3 | with other corporate officers and employees, attendance at management meetings and via reports
4 | and other information provided to him in connection therewith.  Defendant Hervey, by his
5 | specialized financial expertise, was in a unique position to understand the business of Marvell, as
6 | well as its finances, markets and present and future business prospects.  During the relevant
7 | period, Hervey participated in the issuance of false and/or misleading statements, including the
8 | preparation of the false and/or misleading press releases and SEC filings.  Based on his
9 | knowledge of material non-public information regarding the Company, defendant Hervey violated
10 | Cal. Corp. Code §§25402 and 25502.5 by selling 1.6 million shares of Marvell stock for proceeds
11 | of $42.3 million during the relevant period.

12 |     17.    Defendant Weili Dai ("Dai") has been the Executive Vice President and Secretary
13 | of Marvell since 1999.  Previously, Dai served as Vice President and Secretary of Marvell from
14 | 1995 to 1999.  Dai has been a director of Marvell since 1995.  As a Board member, Dai served
15 | with her husband S. Sutardja as the only member of the stock option committee.  The committee
16 | is charged with making "grants of stock options under the Company's Amended and Restated
17 | 1995 Stock Option Plan to employees of the Company and to officers and general managers of
18 | each of the Company's subsidiaries."  Because of Dai's positions, she knew the adverse non-
19 | public information about the business of Marvell, as well as its finances, markets and present and
20 | future business prospects, via access to internal corporate documents, conversations and
21 | connections with other corporate officers and employees, attendance at management meetings and
22 | via reports and other information provided to her in connection therewith.  Defendant Dai, by her
23 | specialized financial expertise, was in a unique position to understand the business of Marvell, as
24 | well as its finances, markets and present and future business prospects.  During the relevant
25 | period, Dai participated in the issuance of false and/or misleading statements, including the
26 | preparation of the false and/or misleading press releases and SEC filings.  Based on her
27 | knowledge of material non-public information regarding the Company, defendant Dai violated
28 |

1   Cal. Corp. Code §§25402 and 25502.5 by selling 2.97 million shares of Marvell stock for
2   proceeds of $75.4 million during the relevant period.

3        18.    Defendant John M. Cioffi ("Cioffi") was a director of Marvell from March 2000 to
4   April 1, 2006. Because of Cioffi's position, he knew the adverse non-public information about
5   the business of Marvell, as well as its finances, markets and present and future business prospects,
6   via access to internal corporate documents, conversations and connections with other corporate
7   officers and employees, attendance at Board meetings and committees thereof and via reports and
8   other information provided to him in connection therewith. During the relevant period, Cioffi
9   participated in the issuance of false and/or misleading statements, including the preparation of the
10  false and/or misleading press releases and SEC filings. As a member (chairman) of the Executive
11  Compensation Committee, defendant Cioffi caused or allowed the manipulative stock option
12  dating described herein. Based on his knowledge of material non-public information regarding
13  the Company, defendant Cioffi violated Cal. Corp. Code §§25402 and 25502.5 by selling 421,482
14  shares of Marvell stock for proceeds of $22.5 million during the relevant period.

15       19.    Defendant Kuo Wei (Herbert) Chang ("Chang") has been a director of Marvell
16  since November 1996. Because of Chang's position, he knew the adverse non-public information
17  about the business of Marvell, as well as its finances, markets and present and future business
18  prospects, via access to internal corporate documents, conversations and connections with other
19  corporate officers and employees, attendance at Board meetings and committees thereof and via
20  reports and other information provided to him in connection therewith. During the relevant
21  period, Chang participated in the issuance of false and/or misleading statements, including the
22  preparation of the false and/or misleading press releases and SEC filings. Based on his
23  knowledge of material non-public information regarding the Company, defendant Chang violated
24  Cal. Corp. Code §§25402 and 25502.5 by selling 11.3 shares of Marvell stock for proceeds of
25  $161.8 million during the relevant period.

26       20.    Defendant Paul R. Gray ("Gray") has been a director of Marvell since March 2000.
27  Because of Gray's position, he knew the adverse non-public information about the business of
28  Marvell, as well as its finances, markets and present and future business prospects, via access to

internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Gray participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. As a member of the Audit and Executive Compensation Committees, defendant Gray caused or allowed the dissemination of the improper public statements described herein. Based on his knowledge of material non-public information regarding the Company, defendant Gray violated Cal. Corp. Code §§25402 and 25502.5 by selling 391,000 shares of Marvell stock for proceeds of $8.4 million during the relevant period.

21.    Defendant Douglas R. King ("King") has been a director of Marvell since April 2004. Because of King's position, he knew the adverse non-public information about the business of Marvell, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, King participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. As a member of the Audit Committee, defendant King caused or allowed the dissemination of the improper public statements described herein. As a member of the Executive Compensation Committee, defendant King controlled the other Defendants' stock option awards. Based on his knowledge of material non-public information regarding the Company, defendant King violated Cal. Corp. Code §§25402 and 25502.5 by selling 20,000 shares of Marvell stock for proceeds of $1.1 million during the relevant period.

22.    Defendant Arturo Krueger ("Krueger") has been a director of Marvell since August 2005. Because of Krueger's position, he knew the adverse non-public information about the business of Marvell, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and

1   other information provided to him in connection therewith.  During the relevant period, Krueger
2   participated in the issuance of false and/or misleading statements, including the preparation of the
3   false and/or misleading press releases and SEC filings.  As a member of the Audit Committee,
4   defendant Krueger caused or allowed the dissemination of the improper public statements
5   described herein.

6           23.     The defendants identified in ¶¶14 and 18-22 are referred to herein as the "Director
7   Defendants."  The defendants identified in ¶¶14-17 are referred to herein as the "Officer
8   Defendants."  The defendants identified in ¶¶14-21 are referred to herein as the "Insider Selling
9   Defendants."

10                                    **DEFENDANTS' DUTIES**

11          24.     Each officer and director of Marvell named herein owed the Company and Marvell
12  shareholders the duty to exercise a high degree of care, loyalty and diligence in the management
13  and administration of the affairs of the Company, as well as in the use and preservation of its
14  property and assets.  The conduct of Marvell's directors and officers complained of herein
15  involves knowing, intentional and culpable violations of their obligations as officers and directors
16  of Marvell. Further, the misconduct of Marvell's officers has been ratified by Marvell's Board,
17  which has failed to take any legal action on behalf of the Company against them.

18          25.     By reason of their positions as officers, directors and fiduciaries of Marvell and
19  because of their ability to control the business and corporate affairs of the Company, the
20  Defendants owed Marvell and its shareholders fiduciary obligations of candor, trust, loyalty and
21  care, and were required to use their ability to control and manage Marvell in a fair, just, honest
22  and equitable manner, and to act in furtherance of the best interests of Marvell and its
23  shareholders so as to benefit all shareholders equally and not in furtherance of their personal
24  interest or benefit.  In addition, as officers and/or directors of a publicly held company, the
25  Defendants had a duty to refrain from utilizing their control over Marvell to divert assets to
26  themselves via improper and/or unlawful practices. Defendants also had a duty to promptly
27  disseminate accurate and truthful information with respect to the Company's operations, earnings
28  and compensation practices.

1      26.     Because of their positions of control and authority as directors or officers of
2  Marvell, each of the Defendants was able to and did, directly and indirectly, control the wrongful
3  acts complained of herein.  As to the Director Defendants, these acts include: (i) agreement to
4  and/or acquiescence in Defendants' option backdating scheme; (ii) willingness to cause Marvell to
5  disseminate false Proxy Statements for 2001-2005, which Proxy Statements failed to disclose
6  Defendants' option backdating scheme and omitted the fact that executive officers were allowed
7  to backdate their stock option grants in order to manipulate the strike price of the stock options
8  they received. Because of their positions with Marvell, each of the Defendants was aware of these
9  wrongful acts, had access to adverse non-public information and was required to disclose these
10  facts promptly and accurately to Marvell shareholders and the financial markets but failed to do
11  so.

12      27.     Between 2001 and 2005, Defendants repeated in each Proxy Statement that the
13  stock option grants made during that period carried an exercise price that was not less than the fair
14  market value of Marvell stock on the date granted, as calculated by the public trading price of the
15  stock at the market's close on that date.  However, Defendants concealed until May 2006 that the
16  stock option grants were repeatedly and consciously *backdated* to ensure that the strike price
17  associated with the option grants was at or near the lowest trading price for that fiscal period. Due
18  to Defendants' breach of their fiduciary duty in the administration of the stock option plans,
19  plaintiff seeks to have the directors' and officers' plans voided and gains from those plans
20  returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options
21  granted to defendants between 2001 and 2004 cancelled, the financial gains obtained via the
22  exercise of such options returned to the Company and to have Defendants revise the Company's
23  financial statements to reflect the truth concerning these option grants.

24      28.     To discharge their duties, the directors of Marvell were required to exercise
25  reasonable and prudent supervision over the management, policies, practices and controls of the
26  business and financial affairs of Marvell.  By virtue of such duties, the officers and directors of
27  Marvell were required, among other things, to:

28

1            (a)     manage, conduct, supervise and direct the business affairs of Marvell in

2 accordance with all applicable law (including federal and state laws, government rules and

3 regulations and the charter and bylaws of Marvell);

4            (b)     neither engage in self-dealing nor knowingly permit any officer, director or

5 employee of Marvell to engage in self-dealing;

6            (c)     neither violate nor knowingly permit any officer, director or employee of

7 Marvell to violate applicable laws, rules and regulations;

8            (d)     remain informed as to the status of Marvell's operations, including its

9 practices in relation to the cost of allowing the pervasive backdating and improperly accounting

10 for such, and upon receipt of notice or information of imprudent or unsound practices, to make a

11 reasonable inquiry in connection therewith, and to take steps to correct such conditions or

12 practices and make such disclosures as are necessary to comply with the U.S. federal securities

13 laws and their duty of candor to the Company's shareholders;

14            (e)     prudently protect the Company's assets, including taking all necessary steps

15 to recover corporate assets (cash, stock options) improperly paid to Company executives and

16 directors together with the related costs (professional fees) proximately caused by the illegal

17 conduct described herein;

18            (f)     establish and maintain systematic and accurate records and reports of the

19 business and affairs of Marvell and procedures for the reporting of the business and affairs to the

20 Board of Directors and to periodically investigate, or cause independent investigation to be made

21 of, said reports and records;

22            (g)     maintain and implement an adequate, functioning system of internal legal,

23 financial and accounting controls, such that Marvell's financial statements – including its

24 expenses, accounting for stock option grants and other financial information – would be accurate

25 and the actions of its directors would be in accordance with all applicable laws;

26            (h)     exercise control and supervision over the public statements to the securities

27 markets and trading in Marvell stock by the officers and employees of Marvell; and

28

1          (i)     supervise the preparation and filing of any financial reports or other
2   information required by law from Marvell and to examine and evaluate any reports of
3   examinations, audits or other financial information concerning the financial affairs of Marvell and
4   to make full and accurate disclosure of all material facts concerning, *inter alia,* each of the
5   subjects and duties set forth above.

6          29.     Each Defendant, by virtue of his or her position as a director and/or officer, owed
7   to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise
8   of due care and diligence in the management and administration of the affairs of the Company, as
9   well as in the use and preservation of its property and assets.  The conduct of the Defendants
10  complained of herein involves a knowing and culpable violation of their obligations as directors
11  and/or officers of Marvell, the absence of good faith on their part, and a reckless disregard for
12  their duties to the Company and its shareholders which Defendants were aware or should have
13  been aware posed a risk of serious injury to the Company.  The conduct of the Defendants who
14  were also officers and/or directors of the Company during the relevant period has been ratified by
15  the Director Defendants who comprised Marvell's entire Board during the relevant period.

16         30.     Defendants breached their duties of loyalty and good faith by allowing or by
17  themselves causing the Company to misrepresent its financial results and prospects, as detailed
18  herein *infra,* and by failing to prevent the Defendants from taking such illegal actions.  As a result,
19  Marvell has expended and will continue to expend significant sums of money.  Such expenditures
20  include, but are not limited to:

21         (a)     improvidently paid executive compensation;

22         (b)     increased capital costs as a result of the loss of market capitalization and the
23  Company's damaged reputation in the investment community;

24         (c)     costs incurred to carry out internal investigations, including legal fees paid
25  to outside counsel; and

26         (d)     incurring possible IRS penalties for improperly reporting compensation.

27         31.     These actions have irreparably damaged Marvell's corporate image and goodwill.
28  For at least the foreseeable future, Marvell will suffer from what is known as the "liar's discount,"

1  a term applied to the stocks of companies who have been implicated in illegal behavior and have

2  misled the investing public, such that Marvell's ability to raise equity capital or debt on favorable

3  terms in the future is now impaired.

4  **AIDING AND ABETTING AND CONCERTED ACTION**

5      32.    In committing the wrongful acts alleged herein, Defendants have pursued or joined

6  in the pursuit of a common course of conduct and acted in concert with one another in furtherance

7  of their common plan.

8      33.    During all times relevant hereto, Defendants collectively and individually initiated

9  a course of conduct which was designed to and did: (i) conceal the fact that the Company was

10  allowing its directors and senior officers to divert hundreds of millions of dollars to Marvell

11  insiders and directors and causing Marvell to misrepresent its financial results; (ii) maintain

12  Defendants' executive and directorial positions at Marvell and the profits, power and prestige

13  which Defendants enjoyed as a result of these positions; (iii) deceive the investing public,

14  including shareholders of Marvell, regarding Defendants' compensation practices and Marvell's

15  financial performance.

16      34.    The purpose and effect of Defendants' common course of conduct was, among

17  other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of

18  control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse

19  information concerning the Company's operation and financial condition and to artificially inflate

20  the price of Marvell common stock so they could dispose of millions of dollars of their own

21  Marvell stock, and enhance their executive and directorial positions and receive the substantial

22  compensation they obtained as a result thereof.

23      35.    Defendants accomplished their common enterprise and/or common course of

24  conduct by causing the Company to purposefully and/or recklessly engage in the option

25  backdating scheme alleged herein and misrepresent Marvell's financial results.  Each of the

26  Defendants was a direct, necessary, and substantial participant in the common enterprise and/or

27  common course of conduct complained of herein.

28

36.   Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

**BACKGROUND**

37.   Marvell designs, develops, and markets integrated circuits for communications-related markets.  The Company's products provide the interface between analog signals and the digital information used in computing and communications systems.  Marvell's technology is applied to the broadband data communications market.

38.   Throughout the relevant period, Defendants caused Marvell to grant them millions of stock options permitting them to buy Marvell stock for pennies on the dollar which they could in turn sell as the Company's stock price increased.  A stock option gives the holder the right to buy a stock at a certain price in the future.  Typically, companies set that price at the same time their directors approve an option grant, with an exercise price – also known as the "strike price" – usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote.

39.   However, many of the millions of options granted to Marvell's executives had a hidden, valuable component:  they were misdated, often making them even more significantly valuable.  The misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the date of the grant was picked retroactively (*e.g.*, a decision in February to pick a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized – and sometimes changed – at a later date (*e.g.*, a decision on January 1 to issue a grant on January 15, but there is a period after January 15 in which the grantor waits to see if a more advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to complete the option grant process by the date of the grant (*e.g.*, where there is a decision to issue a grant as of a certain date, but after that date there are changes in the

1  grantees or amounts to grantees, and although the work is not complete on those grants as of the

2  stated grant date, that date is nonetheless used).

3  ## STOCK OPTION GRANTS

4      40.    Certain of Marvell's manipulative stock option grants are described below

5  (unadjusted for stock splits):

6  **Fiscal 2001 Option Grants**

7      41.    Defendants dated Marvell's fiscal 2001 option grants as of January 2, 2001 at

8  $21.38 per share – the low of the month. Defendant Hervey received 40,000 options at this price.

9  Within days, the stock closed above $24.00 per share.

10  **Fiscal 2003 Option Grants**

11      42.    Defendants dated the two Marvell fiscal 2003 option grants to Hervey on dates

12  which were near the lowest price of the month in which the options were granted.  Defendant

13  Hervey received 40,000 options at $30.69 per share as of February 28, 2002 – the low of the

14  month.  The stock traded as high as $38.80 per share in February.  Defendant Hervey received

15  70,000 options at $13.87 per share as of October 16, 2002, near the low of the month of $11.51.

16  The stock traded as high as $16.64 per share in October.

17  **Fiscal 2004 Option Grants**

18      43.    Defendants fiscal 2004 option grants were most egregious, not only due to the size

19  of the grants but due to the failure to include the supposed grants in Form 4s filed by the

20  Defendants in the months after the purported grant dates.  These grants were dated on the dates

21  which were at or nearly at the low of the months in which the options were granted.  That these

22  options were backdated is shown not only by the fact that Form 4s filed by the respective officers

23  did not mention the grants until months after the supposed grants, but also by the fact that the

24  officers filed Form 4s subsequent to the purported grant dates without mentioning these supposed

25  grants.

26      44.    The Fiscal 2004 Proxy represents that:

27          The following tables set forth certain information as of January 31, 2004
            and for the fiscal year then ended with respect to stock options granted to and
28          exercised by the Named Executive Officers. The options granted to the Named

Executive Officers in fiscal year 2004 granted under the Company's 1995 Plan... . *All options granted to the Named Executive Officers were granted at the then fair market value as determined by the Company's Board of Directors on the date of grant.*

    ... We used the grant date price (the closing price on the Nasdaq National Market on the date of grant) in determining the value of the options granted to Named Executive Officers in fiscal year 2004. . . .

### OPTION GRANTS IN FISCAL YEAR-END 2004

#### Individual Grants

| Name | Number of Securities Underlying Options Granted(#) | % of Total Options Granted to Employees in 2004 | Exercise Price ($/Sh) | Expiration Date |
|---|---|---|---|---|
| Dr. Sehat Sutardja, Ph.D. | 1,500,000 | 10.9% | $36.50 | 12/26/13 |
| Weili Dai | 1,000,000 | 7.3% | $36.50 | 12/26/13 |
| Dr. Pantas Sutardja, Ph.D. | 660,000 | 4.8% | $36.50 | 12/26/13 |
| George Hervey | 50,000 | 0.4% | $24.74 | 05/05/13 |
| | 70,000 | 0.5% | $37.90 | 01/02/14 |

45.     Each of these grants was not reported in Form 4s by these officers until months after the supposed grant date, despite requirements under §403 of the Sarbanes-Oxley Act requiring that changes in ownership reported within two days:

**May 5, 2003 Options**

46.     Supposedly, Hervey received 50,000 options as of this date with an exercise price of $24.74. This was the closing price as of that date. Fortuitously for Hervey, the stock increased significantly and consistently after this date, reaching the $42+ range by September 2003. However, despite filing numerous Form 4s between May and September 2003, Hervey did not include information on this grant until October 7, 2003.

**December 26, 2003 Options**

47.     Similarly, defendants S. Sutardja, Dai and P. Sutardja received 1.5 million, 1 million and 660,000 options, respectively, purportedly as of December 26, 2003, with an exercise price of $36.50 per share. This was the closing price on that date. Once again, the price only increased after that date, reaching above $43.00 per share by mid-January. Yet, these three defendants never reported the grant until they filed Form 4s on March 9, 2004.

**January 2, 2004 Options**

48.    Hervey also received 70,000 options supposedly as of January 2, 2004, with an exercise price of $37.90 per share.  By the time Hervey listed the grants in a filing, the price of Marvell's stock had increased to $44.16 per share, on February 18, 2004.

49.    The delayed reporting of clearly fortuitous dating shows that Defendants were not merely lucky, but were backdating the options.

50.    Below are several of Marvell's grants which occurred right before significant stock price increases (adjusted for stock split):









1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Marvell Technology Group**
November 26, 2003 - February 2, 2004

51.     Complicating matters and magnifying the harm to Marvell, during the relevant period, Marvell's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate.  The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated.  They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

52.     Specifically, in many instances the reported dates Marvell stock options were granted differed from the dates on which the options appear to have been actually granted.  The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose.  ***In almost every case of misdating, the price of***

1  *Marvell shares on the reported option-grant date was lower than the share price on the actual*
2  *day the options were issued.*

3       53.     Through their fiduciary duties of care, good faith and loyalty, Defendants owed to
4  Marvell a duty to ensure that the Company's financial reporting fairly presented, in all material
5  respects, the operations and financial condition of the Company.  In order to adequately carry out
6  these duties, it is necessary for the Defendants to know and understand the material non-public
7  information to be either disclosed or omitted from the Company's public statements.  This
8  material non-public information included the problems Marvell faced because of its deficient
9  internal controls.  Furthermore, defendants who were members of the Audit Committee during the
10  relevant period had a special duty to know and understand this material information as set out in
11  the Audit Committee's charter, which provides that the Audit Committee is responsible for
12  reviewing, in conjunction with management, the Company's policies generally with respect to the
13  Company's earnings press releases and with respect to financial information and earnings
14  guidance provided to analysts and rating agencies.  Defendants S. Sutardja, P. Sutardja, Wei and
15  Hervey, as officers of Marvell, had ample opportunity to discuss this material information with
16  their fellow officers at management meetings and via internal corporate documents and reports.
17  Moreover, defendants who were directors of Marvell had ample opportunity to discuss this
18  material information with fellow directors at any of the scores of Board meetings that occurred
19  during the relevant period as well as at committee meetings of the Board.  Despite these duties,
20  Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or
21  inactions, the misleading statements to be disseminated by Marvell to the investing public and the
22  Company's shareholders during the relevant period.

23       54.     Specifically, since 2001, Defendants have caused Marvell to report false and
24  misleading fiscal and quarterly financial results which materially understated its compensation
25  expenses and thus overstated its earnings (or understated its losses) as follows:

26
27
28

| FISCAL YEAR | REPORTED OPERATING EARNINGS (LOSS) (IN MILLIONS) | REPORTED BASIC EARNINGS (LOSS) PER SHARE |
|---|---|---|
| 2001 | $(2.47) | $0.08 |
| 2002 | $(421.85) | $0.08 |
| 2003 | $(51.41) | $0.24 |
| 2004 | $57.13 | $0.48 |
| 2005 | $164.26 | $0.84 |
| 2006 | $455.76 | $1.35 |

55.     Moreover, throughout the relevant period certain of the Defendants and former officers exercised many of these stock options contributing to their ability to sell over $766 million worth of Marvell stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| S. SUTARDJA * | 06/18/03-03/09/05 | 5,230,654 | $144,309,364 |
| P. SUTARDJA * | 03/06/02-01/10/06 | 4,300,000 | $148,730,053 |
| DAI | 06/17/03-03/02/05 | 2,969,533 | $75,400,286 |
| HERVEY | 02/28/01-04/13/06 | 1,643,084 | $42,297,030 |
| COIFFI | 08/26/03-05/23/06 | 421,482 | $22,563,542 |
| CHANG | 05/22/01-01/19/06 | 11,346,784 | $161,841,561 |
| GRAY | 05/23/01-08/31/05 | 391,000 | $8,482,570 |
| KING | 05/01/06 | 20,000 | $1,121,200 |
| FORMER OFFICERS/DIRECTORS | | | |
| MANUEL ALBA-MARQUES | 05/31/01-10/14/04 | 2,647,362 | $47,227,028 |
| DIOSDADO BANATAO | 06/07/01-04/23/04 | 7,315,000 | $114,094,991 |
| TOTAL | | 36,284,899 | $766,067,625 |

*   **Includes sales by family partnership**

56.     Then, on May 16, 2006, Merrill Lynch issued an analyst report in which it questioned Marvell's option granting practice for the period 2001-2002 and downgraded Marvell from "buy" to "neutral."

57.     In effect, during the relevant period, the Defendants caused Marvell's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Marvell to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based

1   compensation expenses the Company's financial results violated GAAP; and (iii) that the
2   Company's public disclosures presented an inflated view of Marvell's earnings and earnings per
3   share.

4                    **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

5           58.     Plaintiff brings this action derivatively in the right and for the benefit of Marvell to
6   redress injuries suffered and to be suffered by Marvell as a direct result of Defendants' violations
7   of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross
8   mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting
9   thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court
10  which it would not otherwise have.

11          59.     Plaintiff will adequately and fairly represent the interests of Marvell and its
12  shareholders in enforcing and prosecuting its rights.

13          60.     Plaintiff is an owner of Marvell stock and was an owner of Marvell stock during
14  times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

15          61.     Based upon the facts set forth throughout this Complaint, applicable law and the
16  longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon
17  the Marvell Board of Directors to institute this action against the officers and members of the
18  Marvell Board of Directors is excused as futile. A pre-filing demand would be a useless and futile
19  act because:

20                  (a)     The members of Marvell's Board have demonstrated their unwillingness
21  and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves
22  and/or their fellow directors and allies in the top ranks of the corporation for the violations of law
23  complained of herein. These are people they have developed professional relationships with, who
24  are their friends and with whom they have entangling financial alliances, interests and
25  dependencies, and therefore, they are not able to and will not vigorously prosecute any such
26  action.

27                  (b)     The Marvell Board of Directors and senior management participated in,
28  approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts

1   to conceal or disguise those wrongs from Marvell's stockholders or recklessly and/or negligently

2   disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a

3   result of their access to and review of internal corporate documents, or conversations and

4   connections with other corporate officers, employees, and directors and attendance at management

5   and/or Board meetings, each of the Defendants knew the adverse non-public information

6   regarding the improper stock option grants and financial reporting. Pursuant to their specific

7   duties as Board members, the Director Defendants are charged with the management of the

8   Company and to conduct its business affairs. Defendants breached the fiduciary duties that they

9   owed to Marvell and its shareholders in that they failed to prevent and correct the improper stock

10   option granting and financial reporting. Certain directors are also dominated and controlled by

11   other directors and cannot act independently of them. Thus, the Marvell Board cannot exercise

12   independent objective judgment in deciding whether to bring this action or whether to vigorously

13   prosecute this action because each of its members participated personally in the wrongdoing or are

14   dependent upon other Defendants who did.

15           (c)    The acts complained of constitute violations of the fiduciary duties owed by

16   Marvell's officers and directors and these acts are incapable of ratification.

17           (d)    The members of Marvell's Board have benefited, and will continue to

18   benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their

19   positions of control and the perquisites derived thereof, and are incapable of exercising

20   independent objective judgment in deciding whether to bring this action.

21           (e)    Any suit by the current directors of Marvell to remedy these wrongs would

22   likely further expose the liability of Defendants under the federal securities laws, which could

23   result in additional civil and/or criminal actions being filed against one or more of the Defendants,

24   thus, they are hopelessly conflicted in making any supposedly independent determination whether

25   to sue themselves.

26           (f)    Marvell has been and will continue to be exposed to significant losses due

27   to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against

28

1 │ itself or others who were responsible for that wrongful conduct to attempt to recover for Marvell
2 │ any part of the damages Marvell suffered and will suffer thereby.

3 │              (g)    In order to properly prosecute this lawsuit, it would be necessary for the
4 │ directors to sue themselves and the other Defendants, requiring them to expose themselves and
5 │ their comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS
6 │ penalties. This they will not do.

7 │              (h)    Marvell's current and past officers and directors are protected against
8 │ personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in
9 │ this Complaint by directors' and officers' liability insurance which they caused the Company to
10 │ purchase for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of
11 │ Marvell. However, due to certain changes in the language of directors' and officers' liability
12 │ insurance policies in the past few years, the directors' and officers' liability insurance policies
13 │ covering the Defendants in this case contain provisions which eliminate coverage for any action
14 │ brought directly by Marvell against these Defendants, known as, *inter alia,* the "insured versus
15 │ insured exclusion." As a result, if these directors were to sue themselves or certain of the officers
16 │ of Marvell, there would be no directors' and officers' insurance protection and thus, this is a
17 │ further reason why they will not bring such a suit. On the other hand, if the suit is brought
18 │ derivatively, as this action is brought, such insurance coverage exists and will provide a basis for
19 │ the Company to effectuate a recovery.

20 │              (i)    In order to bring this action for breaching their fiduciary duties, the
21 │ members of the Marvell Board would have been required to sue themselves and/or their fellow
22 │ directors and allies in the top ranks of the Company, who are their personal friends and with
23 │ whom they have entangling financial alliances, interests and dependencies, which they would not
24 │ do.

25 │       62.    Plaintiff has not made any demand on shareholders of Marvell to institute this
26 │ action since such demand would be a futile and useless act for the following reasons:

27 │              (a)    Marvell is a publicly traded company with approximately 292 million
28 │ shares outstanding, and thousands of shareholders;

1           (b)     Making demand on such a number of shareholders would be impossible for

2  plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders;

3  and

4           (c)     Making demand on all shareholders would force plaintiff to incur huge

5  expenses, assuming all shareholders could be individually identified.

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON MARVELL'S FINANCIAL STATEMENTS

**The Fiscal 2001 Form 10-K**

63.    On or about April 27, 2001, the Company filed its fiscal 2001 Form 10-K with the SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2001 Form 10-K included Marvell's fiscal 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Marvell's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2002 Form 10-K**

64.    On or about May 1, 2002, the Company filed its fiscal 2002 Form 10-K with the SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2002 Form 10-K included Marvell's fiscal 2002 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Marvell's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2003 Form 10-K**

65.    On or about May 2, 2003, the Company filed its fiscal 2003 Form 10-K with the SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2003 Form 10-K included Marvell's fiscal 2003 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Marvell's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2004 Form 10-K**

66.     On or about April 13, 2004, the Company filed its fiscal 2004 Form 10-K with the SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2004 Form 10-K included Marvell's fiscal 2004 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Marvell's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2005 Form 10-K**

67.     On or about April 14, 2005, the Company filed its fiscal 2005 Form 10-K with the SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2005 Form 10-K included Marvell's fiscal 2005 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Marvell's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2006 Form 10-K**

68.     On or about April 13, 2006, the Company filed its fiscal 2006 Form 10-K with the SEC. The fiscal 2006 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2006 Form 10-K included Marvell's fiscal 2006 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Marvell's compensation expense was understated and its net earnings were overstated.

69.     The materially false and misleading fiscal 2001-2006 Form 10-Ks described above were reviewed, prepared and/or endorsed by the Director Defendants. The fiscal 2001-2006 Form 10-Ks were signed by defendant S. Sutardja as Chairman of the Board and CEO of Marvell as well as by P. Sutardja, Dai, Hervey (as CFO), Chang and Gray. The fiscal 2001-2005 Form 10-Ks were signed by defendant Cioffi and the fiscal 2005-2006 Form 10-Ks were signed by defendant King and the 2006 10-K was signed by defendant Krueger.

1

## DEFENDANTS' SCHEME BEGINS TO UNRAVEL

2     70.     The 2001-2005 Proxy Statements concealed Defendants' option backdating

3  scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when

4  voting on proxy proposals between 2001 and 2005. In fact, it was not until Merrill Lynch's report

5  that shareholders learned that the Proxy Statements which they had relied upon for year were false

6  and misleading. Defendants have been unjustly enriched at the expense of Marvell, which has

7  received and will receive less money from the Defendants when they exercise their options at

8  prices substantially lower than they would have if the options had not been backdated.

9     71.     Then, on May 16, 2006, Marvell's stock dropped as a result of Merrill Lynch

10 issuing an analyst report in which it questioned Marvell's option granting practices.

11    72.     Each dollar diverted to Defendants via the option backdating scheme has come at

12 the expense of the Company. For example, if S. Sutardja's 1.5 million options granted on

13 December 26, 2003 had not been manipulated, but rather had a strike price of $43.00, which it

14 reached shortly after the grant, instead of the $36.50 strike price, which was the trading low for

15 the month, when S. Sutardja exercised those options the Company would receive $64.5 million

16 instead of $54.75 million – *a cost to the Company of $9.75 million for this single instance of*

17 *option backdating*.

18

## THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

19    73.     Unlike most companies which avoid such option backdating abuse by issuing stock

20 option grants at the same time each year, which eliminates the potential for backdating,

21 Defendants ensured that executives would not have any such restrictions. Given the many times

22 Marvell's grants were the low of the month in which options were granted, the date of their stock

23 option grants was clearly more than merely coincidental.

24    74.     As a result of the backdating of options, Defendants have been unjustly enriched at

25 the expense of Marvell, which has received and will receive less money from Defendants when

26 they exercise their options at prices substantially lower than they would have if the options had

27 not been backdated.

28

1

## TOLLING OF THE STATUTE OF LIMITATIONS

2      75.      The Counts alleged herein are timely. As an initial matter, Defendants wrongfully
3   concealed their manipulation of the stock option plans, through strategic timing and fraudulent
4   backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Marvell's
5   public investors that Marvell's option grants were being administered by a committee of
6   independent directors, and by failing to disclose that backdated options were, in fact, actually
7   issued on dates other than those disclosed, and that strategically timed option grants were issued
8   based on the manipulation of insider information that ensured that the true fair market value of the
9   Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

10      76.      Marvell's public investors had no reason to know of the Defendants' breaches of
11   their fiduciary duties until May 2006, when Merrill Lynch issued its report detailing the option
12   practices of Marvell.

13      77.      Finally, as fiduciaries of Marvell and its public shareholders, the Defendants
14   cannot rely on any limitations defense where they withheld from Marvell's public shareholders
15   the facts that give rise to the claims asserted herein, *i.e.*, that the Marvell Board had abdicated its
16   fiduciary responsibilities to oversee the Company's executive compensation practices, and that the
17   option grant dates had been manipulated to maximize the profit for the grant recipients and,
18   accordingly, to maximize the costs for the Company.

19                                ## COUNT I

20            **Violations of §10(b) and Rule 10b-5 of the Exchange Act**
                            **Against All Defendants**
21

22      78.      Plaintiff incorporates by reference and realleges each and every allegation set forth
      above, as though fully set forth herein.
23

24      79.      Throughout the relevant period, Defendants individually and in concert, directly
25   and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the
26   mails, engaged and participated in a continuous course of conduct which allowed certain of the
      Company's officers and directors, including some of the Defendants, to receive improper option
27   grants and make no recompense to the Company.
28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS      - 27 -

80.     Defendants employed devices, schemes and artifices to defraud while in possession of material, adverse non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Marvell not misleading.

81.     Defendants, as top executive officers and directors of the Company, are liable as direct participants in the wrongs complained of herein.  Through their positions of control and authority as officers of the Company, each of the Defendants was able to and did control the conduct complained of herein and the content of the public statements disseminated by Marvell.

82.     Defendants acted with scienter throughout the relevant period, in that they either had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them.  Defendants were among the senior management of the Company, and were therefore directly responsible for the false and misleading statements and/or omissions disseminated to the public through press releases, news reports and filings with the SEC.

83.     Each of the Defendants participated in a scheme to defraud with the purpose and effect of defrauding Marvell.

84.     By virtue of the foregoing, Defendants have violated § 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

COUNT II

**Violations of §14(a) of the Exchange Act Against**<br>**All Defendants**

85.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

86.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or

1  which omits to state any material fact necessary in order to make the statements therein not false

2  or misleading." 17 C.F.R. §240.14a-9.

3     87.    The 2001-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they

4  omitted material facts, including the fact that certain of the Defendants were causing Marvell to

5  engage in an option backdating scheme, a fact which Defendants were aware of and participated

6  in from at least 2001.

7     88.    In the exercise of reasonable care, Defendants should have known that the Proxy

8  Statements were materially false and misleading.

9     89.    The misrepresentations and omissions in the Proxy Statements were material to

10  plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the

11  accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as

12  revelations of the truth would have immediately thwarted a continuation of shareholders'

13  endorsement of the directors' positions, the executive officers' compensation and the Company's

14  compensation policies.

15     90.    The Company was damaged as a result of the material misrepresentations and

16  omissions in the Proxy Statements.

17                                **COUNT III**

18                **Violations of §20(a) of the Exchange Act Against**
                              **All Defendants**

19

20     91.    Plaintiff incorporates by reference and realleges each and every allegation set forth

   above, as though fully set forth herein.

21

22     92.    The Defendants, by virtue of their positions with Marvell and their specific acts,

23  were, at the time of the wrongs alleged herein, controlling persons of Marvell within the meaning

24  of §20(a) of the Exchange Act. They had the power and influence and exercised the same to

   cause Marvell to engage in the illegal conduct and practices complained of herein.

25

26

27

28

## COUNT IV

### Accounting

93. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

94. At all relevant times, Defendants, as directors and/or officers of Marvell, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

95. In breach of their fiduciary duties owed to Marvell and its shareholders, the Defendants caused Marvell, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Marvell and/or failed to properly investigate whether these grants had been improperly made. By this wrongdoing, the Defendants breached their fiduciary duties owed to Marvell and its shareholders.

96. The Defendants possess complete and unfettered control over the improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to certain of the Defendants.

97. As a result of Defendants' misconduct, Marvell has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

98. Plaintiff demands an accounting be made of all stock option grants made to any of the Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to any of the Defendants, as well as the disposition of any proceeds received by any of the Defendants via sale or other exercise of backdated stock option grants received by those Defendants.

## COUNT V

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

99. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

1      100.     Each of the Defendants agreed to and did participate with S. Sutardja, P. Sutardja,

2   Hervey and Dai and the other Defendants and/or aided and abetted one another in a deliberate

3   course of action designed to divert corporate assets in breach of fiduciary duties the Defendants

4   owed to the Company.

5      101.     The Defendants have violated fiduciary duties of care, loyalty, candor and

6   independence owed to Marvell and its public shareholders, have engaged in unlawful self-dealing

7   and have acted to put their personal interests and/or their colleagues' interests ahead of the

8   interests of Marvell and its shareholders.

9      102.     As demonstrated by the allegations above, Defendants failed to exercise the care

10   required, and breached their duties of loyalty, good faith, candor and independence owed to

11   Marvell and its public shareholders, and they failed to disclose material information and/or made

12   material misrepresentations to shareholders regarding Defendants' option backdating scheme.

13      103.     By reason of the foregoing acts, practices and course of conduct, the Defendants

14   have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations

15   toward Marvell and its public shareholders.

16      104.     As a proximate result of Defendants' conduct, in concert with S. Sutardja, P.

17   Sutardja, Hervey and Dai, Marvell has been injured and is entitled to damages.

18                                 **COUNT VI**

19                     **Abuse of Control Against All Defendants**

20      105.     Plaintiff incorporates by reference and realleges each and every allegation set forth

21   above, as though fully set forth herein.

22      106.     The Defendants employed the alleged scheme for the purpose of maintaining and

23   entrenching themselves in their positions of power, prestige and profit at, and control over,

24   Marvell, and to continue to receive the substantial benefits, salaries and emoluments associated

25   with their positions at Marvell. As a part of this scheme, Defendants actively made and/or

26   participated in the making of or aided and abetted the making of, misrepresentations regarding

27   Marvell.

28

1    107.    Defendants' conduct constituted an abuse of their ability to control and influence

2    Marvell.

3    108.    By reason of the foregoing, Marvell has been damaged.

**COUNT VII**

**Gross Mismanagement Against All Defendants**

6    109.    Plaintiff incorporates by reference and realleges each and every allegation set forth

7    above, as though fully set forth herein.

8    110.    Defendants had a duty to Marvell and its shareholders to prudently supervise,

9    manage and control the operations, business and internal financial accounting and disclosure

10    controls of Marvell.

11    111.    Defendants, by their actions and by engaging in the wrongdoing described herein,

12    abandoned and abdicated their responsibilities and duties with regard to prudently managing the

13    businesses of Marvell in a manner consistent with the duties imposed upon them by law.  By

14    committing the misconduct alleged herein, Defendants breached their duties of due care, diligence

15    and candor in the management and administration of Marvell's affairs and in the use and

16    preservation of Marvell's assets.

17    112.    During the course of the discharge of their duties, Defendants knew or recklessly

18    disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants

19    caused Marvell to engage in the scheme complained of herein which they knew had an

20    unreasonable risk of damage to Marvell, thus breaching their duties to the Company. As a result,

21    Defendants grossly mismanaged Marvell.

22    113.    By reason of the foregoing, Marvell has been damaged.

**COUNT VIII**

**Constructive Fraud Against All Defendants**

25    114.    Plaintiff incorporates by reference and realleges each and every allegation set forth

26    above, as though fully set forth herein.

115.    As corporate fiduciaries, Defendants owed to Marvell and its shareholders a duty of candor and full accurate disclosure regarding the true state of Marvell's business and assets and their conduct with regard thereto.

116.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Marvell's shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of Marvell.  Thus they have committed constructive fraud and violated their duty of candor.

117.    By reason of the foregoing, Marvell has been damaged.

### COUNT IX

### Corporate Waste Against All Defendants

118.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

119.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Marvell to waste valuable corporate assets.

120.    As a result of Defendants' corporate waste, they are liable to the Company.

### COUNT X

### Unjust Enrichment Against All Defendants

121.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

122.    As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Marvell, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

123.    All the payments and benefits provided to the Defendants were at the expense of Marvell.  The Company received no benefit from these payments.  Marvell was damaged by such payments.

1   124.   Certain of the Defendants sold Marvell stock for a profit during the period of

2   deception, misusing confidential non-public corporate information. These Defendants should be

3   required to disgorge the gains which they have and/or will otherwise unjustly obtain at the

4   expense of Marvell. A constructive trust for the benefit of the Company should be imposed

5   thereon.

6                                    **COUNT XI**

7                      **Against the Officer Defendants for Rescission**

8   125.   Plaintiff incorporates by reference and realleges each and every allegation

9   contained above as though fully set forth herein.

10   126.   As a result of the acts alleged herein, the stock option contracts between the Officer

11   Defendants and Marvell entered into during the relevant period were obtained through

12   Defendants' fraud, deceit, and abuse of control. Further, the backdated stock options were illegal

13   grants and thus invalid as they were not authorized in accordance with the terms of the publicly

14   filed contracts regarding the Officer Defendants' employment agreements and the Company's

15   stock option plan which was also approved by Marvell shareholders and filed with the SEC.

16   127.   All contracts which provide for stock option grants between the Officer Defendants

17   and Marvell and were entered into during the relevant period should, therefore, be rescinded, with

18   all sums paid under such contracts returned to the Company, and all such executory contracts

19   cancelled and declared void.

20                                    **COUNT XII**

21                **Against the Insider Selling Defendants for Violation of**
                        **California Corporations Code §25402**

22
23   128.   Plaintiff incorporates by reference and realleges each and every allegation set forth

     above, as though fully set forth herein.
24
25   129.   At the time that the Insider Selling Defendants sold their Marvell common stock as

     set forth herein at ¶55, by reason of their high executive and/or directorial positions with Marvell,
26
     the Insider Selling Defendants had access to highly material information regarding the Company,
27

28

1  including the information set forth herein regarding the true adverse facts of Marvell's improper
2  accounting.

3          130.    At the time of such sales, that information was not generally available to the public
4  or the securities markets.  Had such information been generally available, it would have
5  significantly reduced the market price of Marvell shares at that time.

6          131.    The Insider Selling Defendants, and each of them, had actual knowledge of
7  material, adverse non-public information and thus sold their Marvell common stock in California
8  in violation of California Corporations Code §25402.

9          132.    Pursuant to California Corporations Code §25502.5, the Insider Selling
10  Defendants, and each of them, are liable to Marvell for damages in an amount up to three times
11  the difference between the price at which Marvell common stock was sold by these defendants,
12  and each of them, and the market value which that Marvell common stock would have had at the
13  time of the sale if the information known to these defendants, and each of them, had been publicly
14  disseminated prior to that time and a reasonable time had elapsed for the market to absorb the
15  information.

16                                **COUNT XIII**

17          **Against the Insider Selling Defendants for Breach of Fiduciary
          Duties for Insider Selling and Misappropriation of Information**
18
19          133.    Plaintiff incorporates by reference and realleges each and every allegation set forth
    above, as though fully set forth herein.
20
21          134.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew
    the information described above, and sold Marvell common stock on the basis of such
22
    information.
23
24          135.    The information described above was proprietary non-public information
    concerning the Company's financial condition and future business prospects.  It was a proprietary
25
    asset belonging to the Company, which the Insider Selling Defendants used for their own benefit
26
    when they sold Marvell common stock.
27
28

136.   At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.  The Insider Selling Defendants' sales of Marvell common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

137.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.   Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.   Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C.   Directing Marvell to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance policies:

(i)   a proposal requiring that the office of CEO of Marvell and Chairman of the Marvell Board of Directors be permanently held by separate individuals and that the Chairman of the Marvell Board meets rigorous "independent" standards;

(ii)   a proposal to strengthen the Marvell Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

1            (iii)     appropriately test and then strengthen the internal audit and control

2 function;

3            (iv)     rotate independent auditing firms every five years;

4            (v)     control and limit insider stock selling and the terms and timing of stock

5 option grants; and

6            (vi)     reform executive compensation.

7     D.     Ordering the imposition of a constructive trust over Defendants' stock options and

8 any proceeds derived therefrom;

9     E.     Awarding punitive damages;

10     F.     Awarding costs and disbursements of this action, including reasonable attorneys',

11 accountants', and experts' fees; and

12     G.     Granting such other and further relief as this Court may deem just and proper.

13 **JURY DEMAND**

14     Plaintiff demands a trial by jury.

15 DATED: June 22, 2006                 LERACH COUGHLIN STOIA GELLER

16                                      RUDMAN & ROBBINS LLP
                                   WILLIAM S. LERACH

17                                    DARREN J. ROBBINS
                                   TRAVIS E. DOWNS III

18

19

20                                         WILLIAM S. LERACH

21                                      655 West Broadway, Suite 1900
                                   San Diego, CA 92101-3301

22                                      Telephone: 619/231-1058
                                   619/231-7423 (fax)

23                                      Attorneys for Plaintiff

24 S:\CptDraft\Derivative\Cpt Marvell Derv.doc

25

26

27

28

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2        Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3    named parties, there is no such interest to report.

4

5

6                              ATTORNEY OF RECORD FOR PLAINTIFF
                               ALASKA HOTEL & RESTAURANT
7                              EMPLOYEES PENSION TRUST FUND

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>VERIFICATION</u>

I, WILLIAM S. LERACH, hereby declare as follows:

1.     I am a member of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, counsel for plaintiff in the above-entitled action.  I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2.     I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

Executed this 22nd day of June, 2006 at San Diego, California.

_____
WILLIAM S. LERACH