1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    WALTER J. ROBINSON  #40632
2   2475 Hanover Street
    Palo Alto, California  94304
3   Telephone: (650) 233-4500
    Facsimile: (650) 233-4545
4   Email: walter.robinson@pillsburylaw.com

5   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON  #76342
6   ANDREW D. LANPHERE  #191479
    50 Fremont Street
7   Post Office Box 7880
    San Francisco, CA  94120-7880
8   Telephone: (415) 983-1000
    Facsimile: (415) 983-1200
9   Email: bruce.ericson@pillsburylaw.com
           andrew.lanphere@pillsburylaw.com
10
    PILLSBURY WINTHROP SHAW PITTMAN LLP
11  C.J. MARTIN  #228630
    501 West Broadway, Suite 1100
12  San Diego, CA 92101-3575
    Tel: (619) 234-5000
13  Fax: (619) 236-1995
    Email: cj.martin@pillsburylaw.com
14
    Attorneys for Nominal Defendant
15  MARVELL TECHNOLOGY GROUP, LTD.

16                 UNITED STATES DISTRICT COURT

17                 NORTHERN DISTRICT OF CALIFORNIA

18                       SAN JOSE DIVISION

19  _____
                                        )
20  In re MARVELL TECHNOLOGY GROUP      )   Master File No. C-06-03894-RMW(RS)
    LTD. DERIVATIVE LITIGATION,         )
21                                      )   **SUPPLEMENTAL BRIEF OF**
                                        )   **NOMINAL DEFENDANT**
22                                      )   **MARVELL TECHNOLOGY**
                                        )   **GROUP, LTD. SUPPORTING STAY**
23                                      )   **OF INITIAL DISCLOSURES AND**
                                        )   **DISCOVERY PENDING**
24                                      )   **RESOLUTION OF MOTIONS TO**
                                        )   **DISMISS**
25  _____)
    This Document Relates To:  All Actions )
26                                      )

27

28

1

## TABLE OF CONTENTS

2

Page

3   I.      THE PSLRA STAY APPLIES TO THIS ACTION. ...................................................1

4           A.    The PSLRA stay applies to claims not governed by the PSLRA so
                  long as some claims are governed by the PSLRA............................................1

5
            B.    The PSLRA discovery stay applies to non-class actions and to
6                 derivative actions so long as they assert claims under the PSLRA. ...............3

7           C.    Plaintiffs' authorities are inapposite. ...............................................................4

8           D.    Plaintiffs have not pleaded anything that could invoke the narrow
                  exceptions to the PSLRA discovery stay ..........................................................5
9
    II.     THE COURT HAS AND SHOULD EXERCISE ITS INHERENT
10          POWER TO STAY DISCOVERY UNDER RULE 23.1. ...........................................7

11  III.    A STAY OF DISCOVERY IS CONSISTENT WITH THE GENERAL
            PRINCIPLES APPLICABLE TO DERIVATIVE ACTIONS...................................8
12
    IV.     CONCLUSION. ......................................................................................................10
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- ii -                 Supplemental Briefing re Stay of Discovery
                                                                    Case No. C-06-03984 RMW (RS)

TABLE OF AUTHORITIES

Page

**Cases**

*Aronson v. Lewis*
   473 A.2d 805 (Del. 1984) ........................................................................ 9

*BFP v. Resolution Trust Corp.*,
   511 U.S. 531 (1994) ................................................................................ 3

*Biondi v. Scrushy*,
   820 A.2d 1148 (Del. Ch. 2003) ........................................................... 9, 10

*Blackin v. Red Brick Systems, Inc.*,
   No. C-98-1206-MJJ, 1999 WL 33952501
   (N.D. Cal. Apr. 30, 1999) ...................................................................... 1

*Brehm v. Eisner*
   746 A.2d 244 (Del. 2000) ...................................................................... 8

*Fazio v. Lehman Brothers, Inc.*,
   No. 1:02CV157, 2002 WL 32121836
   (N.D. Ohio 2002) ................................................................................... 4

*Goldstein v. Sutardja*,
   N.D. Cal. Case No. C06-06286 JSW ................................................... 6, 7

*Grimes v. Donald*
   673 A.2d 1207 (Del. 1996) .................................................................... 9

*Gunther v. Tomasetta*,
   C.D. Cal. Case No. 2:06-cv-02429-R(CTx) ......................................... 5

*In re AOL Time Warner Sec. & ERISA Litig.*,
   No. 1500, 02 Civ. 5575 (SWK), 2003 WL 21729842
   (S.D.N.Y. July 25, 2003)) ..................................................................... 6

*In re Cardinal Health, Inc. Sec. Litig.*,
   365 F. Supp. 2d 866 (S.D. Ohio 2005) ................................................. 7

*In re Elan Corp. Sec. Litig.*,
   No. 02 Civ. 865 RMB FM, 2004 WL 1303638
   (S.D.N.Y. May 18, 2004) ...................................................................... 6

*In re Enron Corporation Sec., Derivative & ERISA Litig.*,
   Nos. MDL-1446, Civ.A. H-01-3624, 2002 WL 31845114
   (S.D. Tex. Aug. 16, 2002) ..................................................................... 6

*In re Fannie Mae Sec. Litig.*,
   362 F. Supp. 2d 37 (D.D.C. 2005)......................................................... 6

*In re First Bancorp Derivative Litig.*,
   407 F. Supp. 2d 585 (S.D.N.Y. 2006) ............................................. 4, 5, 7

*In re FirstEntergy S'holder Derivative Litig.*,
219 F.R.D. 584 (N.D. Ohio 2004)..................................................4

*In re Fluor Corp. Sec. Litig.*,
No. SA CV 97-734-AHS-EEX, 1999 WL 817206
(C.D. Cal. Jan. 19, 1999)..............................................................5

*In re Lantronix, Inc. Sec. Litig.*,
No. CV 02-03899 PA, 2003 WL 22462393
(C.D. Cal. Sept. 26, 2003) ...........................................................6

*In re Odyssey Healthcare, Inc. Sec. Litig.*,
No. Civ. A.3:04-CV-0844-N, 2005 WL 1539229
(N.D. Tex. June 10, 2005)............................................................6

*In re Rampersad*,
381 F. Supp. 2d 131 (S.D.N.Y. 2003) ..........................................6

*In re Trump Hotel Shareholder Derivative Litig.*,
No. 96 Civ.7820 DAB, 1997 WL 442135
(S.D.N.Y. Aug. 5, 1997).............................................................3, 4

*In re Tyco Int'l Ltd. Multidistrict Litigation*,
MDL No. 02-1335-B, 2003 WL 23830479
(D.N.H. Jan. 29, 2003). ...............................................................6

*In re Vivendi Universal, S.A., Sec. Litig.*,
381 F. Supp. 2d 129 (S.D.N.Y. 2003) ..........................................6

*In re WorldCom, Inc. Sec. Litig.*,
234 F. Supp. 2d 301 (S.D.N.Y. 2002) ..........................................6

*Medhekar v. United States Dist. Ct.*,
99 F.3d 325 (9th Cir. 1996) .......................................................1, 7

*Medical Imaging Centers of Amer., Inc. v. Lichtenstein*,
917 F. Supp. 717 (S.D. Cal. 1996) ...............................................4

*Riggs v. Termeer*,
No. 03 Civ.4014 MP, 2003 WL 21345183
(S.D.N.Y. June 9, 2003) ...............................................................4

*Sarantakis v. Frank Dominic Gruttadauria*,
No. 02 C 1609, 2002 WL 1803750
(N.D. Ill. Aug. 5, 2002) ................................................................2

*Scattered Corp. v. Chicago Stock Exchange, Inc.*
701 A.2d 70 (Del. 1997)................................................................8

*SG Cowen Sec. Corp. v. U.S. Dist. Court* ,
189 F.3d 909 (9th Cir. 1999) .....................................................1, 2

*Stotland v. GAF Corp.*
No. Civ. A. 6876, 1983 WL 21371 (Del. Ch. Sept. 1, 1983) ......8

*The Winer Family Trust v. Queen,*
    No. Civ.A. 03-4318, 2004 WL 350181
    (E.D. Pa. Feb. 6, 2004) ........................................................................................ 2

*Tobias Holdings, Inc. v. Bank United Corp.,*
    177 F. Supp. 2d 162 (S.D.N.Y. 2001) ....................................................... 2

*Weschler v. Quad-C, Inc.*
    No. Civ. A. 18118, 2000 WL 33173170
    (Del. Ch. Sept. 12, 2000) ........................................................................... 8

**Statutes and Codes**

Securities Exchange Act of 1934
    Section 14(a) ............................................................................................. 1, 6
    Section 10(b) ............................................................................................. 1, 6
    Section 20(a) ............................................................................................. 1, 6
    Section 20(e) ................................................................................................. 1
    Section 21D(b)(3)(B) .................................................................................... 1

United States Code
    Title 15, section 78u-4(a) ............................................................................. 3
    Title 15, section 78u-4(b)(3)(B) ............................................................ 1, 3, 5
    Title 15, section 78u-4(b)(3)(c)(1) ............................................................... 5

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 23.1 .................................................................................................. 5, 7

Rules of the Securities and Exchange Commission
    Rule 10b-5 .................................................................................................... 6
    Rule 14a-9 .................................................................................................... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Pursuant to the Court's order at the October 6, 2006 Case Management Conference,

2    nominal defendant **MARVELL TECHNOLOGY GROUP, LTD.** ("Marvell") hereby

3    submits this supplemental briefing regarding the reasons why discovery should be stayed

4    until plaintiffs' amended and consolidated complaint is filed, all defendants are served and

5    all defendants' motions to dismiss are decided.

6    **I.     THE PSLRA STAY APPLIES TO THIS ACTION.**

7         **A.     The PSLRA stay applies to claims not governed by the PSLRA so long**

8              **as some claims are governed by the PSLRA.**

9         The existing complaints assert claims under sections 10(b), 14(a) and 20(a) of the

10   Securities Exchange Act of 1934 (the "Exchange Act").[1]  The Private Securities Litigation

11   Reform Act of 1995 ("PSLRA") thus governs these complaints.  The PSLRA applies

12   expressly to all suits alleging claims under these Securities Exchange Act provisions and

13   stays discovery pending resolution of any motions to dismiss the complaint.  Exchange Act

14   § 21D(b)(3)(B), 15 U.S.C. § 78u-4(b)(3)(B).  The PSLRA stay applies to initial disclosures

15   as well as traditional discovery vehicles such as document requests or depositions.

16   *Medhekar v. United States Dist. Ct.*, 99 F.3d 325, 328 (9th Cir. 1996).

17        Congress intended the PSLRA stay "to prevent unnecessary imposition of discovery

18   costs on defendants." *SG Cowen Sec. Corp. v. U.S. Dist. Court* , 189 F.3d 909, 911 (9th Cir.

19   1999).  "Congress clearly intended that complaints in these securities actions should stand

20   or fall based on the actual knowledge of the plaintiffs rather than information produced by

21   the defendants after the action has been filed."  *Medhekar*, 99 F.3d at 328; *see also*

22   *Blackin v. Red Brick Systems, Inc.*, No. C-98-1206-MJJ, 1999 WL 33953501, at *4

23   (N.D. Cal. Apr. 30, 1999) ("[P]laintiffs are not allowed to pin their hopes of supporting

24   their allegations on future discovery.").

25   _____

26   [1]  In *Alaska Hotel & Restaurant Employees Pension Trust Fund v. Sutardja, et al.*, plaintiffs
     purport to state claims under sections 10(b) (Count I), 14(a) (Count II) and 20(e)

27   (Count III) of the Exchange Act.  In *Shei v. Sutardja*, *et al*. and in *Marinelli v. Sutardja,
     et al.,* plaintiffs purport to state a claim under section 10(b) (Count I).

28

1    The PSLRA stay applies when, as here, Exchange Act and non-Exchange Act

2  claims are present in the complaint.  *See SG Cowen Sec. Corp.,* 189 F.3d at 913 n.1 ("We

3  also reject plaintiffs' argument that the district court should have permitted discovery

4  because plaintiffs asserted state claims.  As the district court correctly explained,

5  'Congress' attempt to address [concerns of discovery abuse] would be rendered

6  meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent

7  state law claims in federal court in conjunction with their federal law claims.'").[2]  Thus, the

8  fact that plaintiffs also allege state law claims in addition to Exchange Act claims does not

9  render the PSLRA stay inapplicable.  Because they have alleged Exchange Act claims,

10  plaintiffs cannot proceed with any discovery until all motions to dismiss are resolved.

11    Plaintiffs have yet to file their consolidated complaint and determine which parties

12  to name as defendants.  A number of those individuals named in one or more of the initial

13  complaints have not been served, and plaintiffs' returns of service filed with the court do

14  not dispute this fact.  All defendants who are eventually named and served have the right to

15  move to dismiss that complaint and to do so before any initial disclosures or formal

16  discovery.

17

18

---

19  [2]  Plaintiffs in other PSLRA actions have argued that discovery should be allowed to
     proceed on their state law claims based on *Tobias Holdings, Inc. v. Bank United Corp.*,
20   177 F. Supp. 2d 162 (S.D.N.Y. 2001).  *Tobias* held that the PSLRA discovery stay did
     not apply to state common-law claims for breach of contract and tortious interference
21   with contract (but did apply to state-law claims for fraud and conspiracy) because those
     claims had their own jurisdictional basis (diversity) *and* were legally and factually
22   distinct from the securities fraud claim.

23   *Tobias* finds no application here.  *Tobias* is not from the Ninth Circuit and, to the extent it
     is contrary to *SG Cowen,* it is not good law in the Ninth Circuit.  It is also readily
24   distinguishable, as plaintiffs do not claim diversity jurisdiction and their state law and
     securities law claims are based on the same factual allegations.  *See The Winer Family
25   Trust v. Queen,* No. Civ.A. 03-4318, 2004 WL 350181, *3-*4 (E.D. Pa. Feb. 6, 2004)
     (distinguishing *Tobias* and relying instead on *SG Cowen* in holding that the discovery
26   stay applied to plaintiff's breach of fiduciary duty claim); *Sarantakis v. Frank Dominic
     Gruttadauria*, No. 02 C 1609, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002)
27   (denying motion for relief from stay despite *Tobias* because non-PSLRA claims arose
     from same facts as securities law claims).

28

1    **B.**     **The PSLRA discovery stay applies to non-class actions and to derivative**

2            **actions so long as they assert claims under the PSLRA.**

3            The PSLRA stay also applies even though this is a derivative action.  The PSLRA

4    stay applies to "any private action" that alleges Exchange Act claims:

5        In any private action arising under this chapter [the Exchange Act], all
         discovery and other proceedings shall be stayed until the pendency of any
6        motion to dismiss, unless the court finds upon motion of any party that
         particularized discovery is necessary to preserve evidence or to prevent
7        undue prejudice to that party.

8    15 U.S.C. § 78u-4(b)(3)(B).  Plaintiffs incorrectly argue that "[t]he PSLRA discovery stay,

9    by its clear and unambiguous terms, applies only to private class actions asserting claims

10   arising under the federal securities laws."[3]  The statute contains no such limitation.  The

11   statute covers by its terms any "private action," and is not limited to a "class action."  And

12   for good reason since the extreme burden on the defendants which Congress sought to

13   avoid is the same whether the case is filed as a class action  or on behalf of one or more

14   individuals.

15           Other provisions of the PSLRA *are* limited to "class actions" (*see* 15 U.S.C. § 78u-

16   4(a)), showing that Congress knew full well how to specify which provisions of the PSLRA

17   were limited to class actions and which were not, and did not intend the PSLRA stay to be

18   so limited.  This was the conclusion reached in *In re Trump Hotel Shareholder Derivative*

19   *Litig.*, No. 96 Civ.7820 DAB, 1997 WL 442135 (S.D.N.Y. Aug. 5, 1997).  The court in that

20   case held that derivative plaintiffs' argument that the PSLRA stay is limited to class actions

21   "must be rejected" because Congress specifically limited other provisions of the PSLRA to

22   "class actions" but not the PSLRA stay.  *Id.* at *1.  "'It is generally presumed that Congress

23   acts intentionally and purposefully when it includes particular language in one section of a

24   statute but omits it from another.'"  *Id.* (quoting *BFP v. Resolution Trust Corp.*, 511 U.S.

25   531, 537 (1994)).

26   _____

27   [3]  Joint Case Management and [Proposed] Order Submitted by Plaintiff and by Nominal
         Defendant Marvell Technology Group Ltd. ("CMC Statement"), Dkt. 13, at 7:28-8:1.

28

1    Numerous courts have held that "any private action" means exactly what it says and

2  does not limit the PSLRA stay to class actions.  These courts have applied the PSLRA stay

3  to a variety of non-securities class actions alleging Exchange Act claims, including

4  derivative actions.  Thus, *In re Trump Hotel Shareholder Derivative Litig.*, 1997 WL

5  442135, at *2,  applied the PSLRA stay to a derivative action that—just like this action—

6  alleged a mix of Exchange Act and state law claims.  The *Trump* court said:  "Although

7  plaintiffs appear to be correct that the PSLRA has no application to actions in which only

8  state law claims are alleged, this is simply not such an action.  Having chosen to invoke

9  Section 14 of the Exchange Act, plaintiffs are necessarily subject to the PSLRA."

10  Similarly, *Medical Imaging Centers of Amer., Inc. v. Lichtenstein*, 917 F. Supp. 717, 721

11  (S.D. Cal. 1996) applied the PSLRA stay to a non-class action alleging both Exchange Act

12  and state law claims.  The court said:  "The legislation by its terms does not carve out

13  specific types of actions which will be exempt from the stay."  *See also Riggs v. Termeer*,

14  No. 03 Civ.4014 MP, 2003 WL 21345183 (S.D.N.Y. June 9, 2003) (holding that PSLRA

15  stay "applies . . . to this non-class action as well, since the PSLRA was not intended to be

16  limited to class actions . . ."); *Fazio v. Lehman Brothers, Inc.*, No. 1:02CV157, 2002 WL

17  32121836, at *2 (N.D. Ohio May 16, 2002) ("[B]y its plain language, the statutory stay is

18  not limited to class actions.").

19    **C.    Plaintiffs' authorities are inapposite.**

20    The case plaintiffs cited in the Case Management Statement,[4] *In re First Bancorp*

21  *Derivative Litig.*, 407 F. Supp. 2d 585 (S.D.N.Y. 2006), is inapposite.  Unlike here, the

22  consolidated derivative actions at issue there did **not** allege Exchange Act claims.  *Id.* at

23  586 & n.4[5]; *see also In re FirstEntergy S'holder Derivative Litig.*, 219 F.R.D. 584, 587

24  (N.D. Ohio 2004) (holding that PSLRA stay did not apply to derivative action because

25  _____

26  [4]  Dkt. 13, at 4:12-13, 8:1-2.
    [5]  *See In re First Bancorp Derivative Litig.*, S.D.N.Y. Case No. 1:05-cv-09458-JSR, Dkt. 1

27    (complaint alleging causes of action for breach of fiduciary duty, abuse of control, gross
      mismanagement, waste of corporate assets and unjust enrichment).

28

1    plaintiffs alleged only state law derivative claims and alleged no federal securities law

2    claims).  And even then, the *First Bancorp* court still stayed discovery (albeit not pursuant

3    to the PSLRA) pending its resolution of the defendant's motion to dismiss.  *First Bancorp,*

4    407 F. Supp. 2d at 587.  (*See* Part II below, where we argue that *First Bancorp* provides

5    precedent for staying discovery in this action under Fed. R. Civ. P. 23.1.).

6           Plaintiffs likewise find no support in the order from the Central District of

7    California case that they handed to the Court during the Case Management Conference,

8    *Gunther v. Tomasetta*, C.D. Cal. Case No. 2:06-cv-02429-R(CTx).  In that case, Judge

9    Manuel Real signed a proposed form of order prepared by plaintiffs' counsel but did not

10   issue a reasoned opinion explaining the basis for his decision not to stay discovery.  The

11   order thus does not provide authority for any particular proposition, and certainly does not

12   provide any basis to disregard the numerous decisions cited above holding that the PLSRA

13   stay applies to any private action alleging Exchange Act claims, including derivative

14   actions.

15          **D.      Plaintiffs have not pleaded anything that could invoke the narrow**

16                    **exceptions to the PSLRA discovery stay.**

17          Plaintiffs have not argued that this case falls within the narrow exception to the

18   PSLRA stay, which allows limited discovery where a party shows that "particularized

19   discovery is necessary to preserve evidence or to prevent undue prejudice to that party."

20   15 U.S.C. § 78u-4(b)(3)(B).  Plaintiffs have made no such showing, and they could not.

21   Defendants are required to preserve evidence for the duration of the stay (15 U.S.C. § 78u-

22   4(b)(3)(c)(1)), and relief from the stay cannot be premised on "mere generalizations of

23   fading memories and possible loss or destruction [of evidence]." *In re Fluor Corp. Sec.*

24   *Litig.*, No. SA CV 97-734-AHS-EEX, 1999 WL 817206, at *3 (C.D. Cal. Jan. 15, 1999).

25

26

27

28

1   Accordingly, plaintiffs face no prejudice whatsoever by waiting to commence discovery

2   until motions to dismiss are adjudicated.[6]

3          The Court has set an April 27, 2007 hearing date for motions to dismiss.  Once the

4   consolidated complaint is filed, Marvell anticipates moving to dismiss (on, among other

5   grounds, the ground that plaintiffs lack standing to pursue this action).  That same ground

6   applies to the individual defendants, who will have other bases on which to move to

7   dismiss.  Because the PSLRA stay applies, all discovery should remain stayed pending the

8   resolution of all motions to dismiss.

9          The need for a discovery stay is only reinforced by the filing of a related securities

10  class action on October 5, 2006.  *Goldstein v. Sutardja*, N.D. Cal. Case No. C06-06286

11  JSW, was filed against Marvell and five of its officers and directors.  The two-count

12  complaint alleges violations of sections 10(b) and 20(a) of the Exchange Act and Rule 10b-

13  5 (Count I) and section 14(a) of the Exchange Act and Rule 14a-9 (Count II).  The plaintiffs

14  in *Goldstein* have filed a notice of related case stating that action is related to this one due

15

16  [6] Nor do the cases that involved the "unique circumstances" of the WorldCom and Enron
       litigation establish that undue prejudice exists here.  The court in *In re WorldCom, Inc.*
17     *Sec. Litig.*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002), for example, held that lead plaintiff
       would be prejudiced in upcoming global settlement discussions because all the other
18     players (the U.S. Attorney, the SEC, the creditors committee and the ERISA plaintiffs)
       already had the documents or were about to get them; lead plaintiff would have been the
19     only major party at the settlement table without the documents, prejudiced by its
       "inability to make informed decisions about its litigation strategy in a rapidly shifting
20     landscape."  *Id.* at 305-06.  That is not our case.  *In re Enron Corporation Sec.,*
       *Derivative & ERISA Litig.*, Nos. MDL-1446, Civ.A. H-01-3624, 2002 WL 31845114
21     (S.D. Tex. Aug. 16, 2002), also involved a 'rapidly shifting landscape' – bankruptcy,
       government investigations, lots of other players with access to the evidence.
22
       Under the circumstances presented here, with no bankruptcy and no imminent
23     settlements, courts routinely refuse to grant relief from the PSLRA stay.  *In re Lantronix,*
       *Inc. Sec. Litig.*, No. CV 02-03899 PA, 2003 WL 22462393 (C.D. Cal. Sept. 26, 2003); *In*
24     *re Odyssey Healthcare, Inc. Sec. Litig.*, No. Civ. A.3:04-CV-0844-N, 2005 WL 1539229
       (N.D. Tex. June 10, 2005); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37 (D.D.C.
25     2005); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 RMB FM, 2004 WL 1303638
       (S.D.N.Y. May 18, 2004); *In re AOL Time Warner Sec. & ERISA Litig.*, No. 1500, 02
26     Civ. 5575 (SWK), 2003 WL 21729842 (S.D.N.Y. July 25, 2003); *In re Rampersad,* 381
       F. Supp. 2d 131, 133-34 (S.D.N.Y. 2003); *In re Vivendi Universal, S.A., Sec. Litig.*, 381
27     F. Supp. 2d 129 (S.D.N.Y. 2003); *In re Tyco Int'l Ltd. Multidistrict Litigation*, MDL No.
       02-1335-B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003).

28

1   to its common factual and legal bases.  *Goldstein* Dkt. 3.  In addition, on October 13, 2006,

2   Marvell filed in this case an Administrative Motion to Consider Whether Cases Should Be

3   Related.  Dkt. 17.

4          *Goldstein*, like this action, is subject to the PSLRA.  Given the overlapping claims

5   and factual allegations of *Goldstein* and this action, any discovery that might be sought by

6   the derivative plaintiffs would certainly relate to the issues raised in *Goldstein*.  Discovery

7   in this action thus would effectively offer the class action plaintiffs discovery before

8   motions to dismiss are heard, contrary to the PSLRA.  *See In re Cardinal Health, Inc. Sec.*

9   *Litig.*, 365 F. Supp. 2d 866, 875 (S.D. Ohio 2005) (staying discovery in parallel state court

10   derivative actions; "this Court remains concerned that some form of discovery . . . will

11   reach Plaintiffs before this Court has decided any dismissal motion"); *Medhekar*, 99 F.3d at

12   328 (holding that Congress intended that securities complaints "should stand or fall based

13   on the actual knowledge of the plaintiffs rather than information produced by the

14   defendants after the action has been filed.")

15   **II.     THE COURT HAS AND SHOULD EXERCISE ITS INHERENT POWER TO**

16           **STAY DISCOVERY UNDER RULE 23.1.**

17          Even if the PSLRA did not apply to this action, the Court's inherent power to

18   provide for the conduct of proceedings in a derivative action (*see* Fed. Rule Civ. P. 23.1,

19   Advisory Committee Note (1966 Addition)) would allow the Court to stay discovery

20   pending the resolution of all motions to dismiss.  Such an order would further the efficient

21   resolution of this action.  Indeed, this was the holding of the case cited by plaintiffs in the

22   Case Management Statement, *In re First Bancorp Derivative Litig.*  In that case, even

23   though the PSLRA did not apply – because there were no Exchange Act claims alleged –

24   the court nevertheless exercised its discretion under Rule 23.1 to stay discovery pending the

25   resolution of a motion to dismiss.  407 F. Supp. 2d at 586-87 ("[T]he Court believes that in

26   cases such as the instant one, it is appropriate for the Court, in the exercise of its discretion,

27

28

1   to stay discovery for the short time necessary to hear a motion to dismiss under Rule 23.1").

2   The same considerations should lead the Court to stay discovery in this action.

3   **III.    A STAY OF DISCOVERY IS CONSISTENT WITH THE GENERAL**

4   **PRINCIPLES APPLICABLE TO DERIVATIVE ACTIONS.**

5       Plaintiff must show standing to bring this claim that belongs to Marvell.  Because

6   Marvell, the corporation owning the claim, challenges the individual shareholder's right to

7   sue derivatively, all plaintiffs' discovery is stayed.  *Beam vs. Stewart*, 845 A.2d 1040, 1056

8   & n. 49  (Del. 2004).  See also *Weschler v. Quad-C, Inc.*, No. Civ. A. 18118, 2000 WL

9   33173170, at *1 (Del. Ch. Sept. 12, 2000); *Scattered Corp. v. Chicago Stock Exchange,*

10  *Inc.*, 701 A.2d 70, 77 (Del. 1997) (affirming lower court ruling that, as a matter of law,

11  plaintiffs were not entitled to discovery on rejection of a demand and stating:  "A plaintiff's

12  standing to sue in a derivative suit, whether based on demand-refused *or demand-excused*,

13  must be determined on the basis of the well-pleaded allegations of the complaint.")

14  (emphasis added)[7]; *Stotland v. GAF Corp.*, No. Civ. A. 6876, 1983 WL 21371, at *3 (Del.

15  Ch. Sept. 1, 1983) (granting motion to stay discovery; holding that the Delaware policy "is

16  to resolve the question of futility through a consideration of only those 'matters referred to

17  in the pleadings,' . . . [and] Plaintiffs are not entitled to take discovery in order to prove

18  allegations of futility").

19      Plaintiffs made no demand on Marvell's board before filing this lawsuit.  Dkt. 1

20  ¶¶ 58-62.  As a matter of substantive law and to protect the principle that the elected board

21  of directors manages the affairs of a corporation (including litigation), Delaware law[8]

22  _____

23  [7]  *Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000) overruled *Grimes, Scattered* and *Aronson* on the standard of appellate review applied to trial court decisions on share-holder standing to assert derivative claims.  *Brehm,* however, accords with the view that

24  shareholders in a Delaware corporation must plead demand futility without discovery. *Brehm* held that "it is no excuse for plaintiffs to argue that they are unable to allege these

25  particularized facts [that demand is excused] because they are cut off from access to discovery."  *Id.* at 262 n.57.

26  [8]  As mentioned by Marvell's counsel at the Case Management Conference, Marvell is not a Delaware corporation but a Bermuda corporation.  We do not mean to suggest that

27  Bermuda law is in all respects the same as Delaware law.  Indeed, at the appropriate time
                                                                                  (continued…)

28

- 8 -

1   prohibits individual shareholders who do not make a demand on the board from suing

2   derivatively *unless* they plead particular facts demonstrating that a demand on the board

3   would be futile.  The requirement that the shareholder "allege with particularity why [she]

4   was justified in not having made the effort to obtain board action . . . is a 'basic principle of

5   corporate governance' and is a matter of substantive law." *Grimes v. Donald*, 673 A.2d

6   1207, 1216 (Del. 1996).  Far from being a technical pleading rule, "the demand requirement

7   is a recognition of the fundamental precept that directors manage the business affairs of

8   corporations." *Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984). This rule makes sense.  It

9   would be fundamentally wrong to permit a shareholder, whose right to assert a corporate

10   claim has yet to be established, to impose discovery costs on the very company that owns

11   the claims that the shareholder asserts.

12       In the Case Management Statement, plaintiffs cite *Biondi v. Scrushy*, 820 A.2d

13   1148, 1163-67 (Del. Ch. 2003), in arguing that "the special committee investigation is

14   entitled to no deference by this Court, and that a stay pending the [committee's]

15   investigation is improper."  Dkt. 13, at 8:2-8.  But *Biondi* recognizes that the "general rule"

16   is that a stay must be granted when a special committee is formed to consider whether

17   derivative actions should be prosecuted.  820 A.2d at 1163.  The *Biondi* court found this

18   rule did not apply because of "an odd confluence of unusual and highly troubling facts" –

19   most notably that the committee "publicly and prematurely issued statements exculpating

20   one of the key company insiders whose conduct is supposed to be investigated" – which

21   convinced the court that the special committee could not meet its burden to prove its

22   independence if it eventually decided to seek termination of the derivative action.  *Id.* at

23

24   _____

(…continued)

25   we will argue that Bermuda law is less likely than Delaware law to permit a derivative
action to proceed unless and until the plaintiff can establish a prima facie case that it has

26   standing and the case appears to be one in which a shareholder should be permitted to
control matters normally left to a corporation's board of directors.  For present purposes

27   we note that the usual American procedural rule, as exemplified by Delaware law, is not
to permit discovery until standing is established.

28

1    1165-66.  Plaintiffs' rhetoric notwithstanding, there is nothing analogous in the record of

2    this case.[9]

3    **IV.        CONCLUSION.**

4           The Court should, as Congress intended, stay discovery until all motions to dismiss

5    have been resolved.

6           Dated:  October 16, 2006.

7                                           PILLSBURY WINTHROP SHAW PITTMAN LLP
                                            WALTER J. ROBINSON
                                            2475 Hanover Street
8                                           Palo Alto, California  94304

9                                           PILLSBURY WINTHROP SHAW PITTMAN LLP
                                            BRUCE A. ERICSON
10                                          ANDREW D. LANPHERE
                                            50 Fremont Street
11                                          Post Office Box 7880
                                            San Francisco, CA  94120-7880

12
                                            PILLSBURY WINTHROP SHAW PITTMAN LLP
13                                          C.J. MARTIN
                                            501 West Broadway, Suite 1100
14                                          San Diego, CA 92101-3575

15

                                            By /s/ Bruce A. Ericson
16                                                  Bruce A. Ericson

17                                          Attorneys for Nominal Defendant MARVELL
                                            TECHNOLOGY GROUP, LTD
18

19

20

21

22

23

24    _____

25    [9]  *Compare Strougo v. Padegs*, 986 F. Supp. 812, 815 (S.D.N.Y. 1997) (denying relief from
      stay based on argument that committee not independent and holding that such arguments
26    were relevant to the review of the committee's recommendations, not to discovery stay);
      *Pompeo v. Hefner*, 1983 WL 20284, at *2-3 (Del.Ch. 1983) (holding that fact members
27    of committee were appointed by majority-shareholder defendant did not make it non-
      independent and staying discovery pending the committee's investigation).

28